IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. NO. 2:05cr301-WHA |
| ) | |
| MICHAEL DAVID KING ) | |

**RESPONSE TO MOTION TO SUPPRESS**

**I.    STATEMENT OF FACTS**

The Government expects the following facts to be adduced at the hearing:

In February 2003, the defendant Michael David King was a civilian employee of Northrop Grumman working in Saudi Arabia in connection with a Northrop contract with the Defense Department. King worked at the Prince Sultan Air Base ("PSAB") and resided in the Friendly Forces Housing Complex, where he had a dorm room.

In his dorm room, King could connect his personal laptop into the Air Force's computer network at PSAB, which would give him internet access. To do that, he had to become a registered user of the PSAB network, with his own user name and password. Everytime King would log in to the system, a screen would appear that warned the user that the system would be monitored and that use of the system constituted consent to monitoring. King would have to click "OK" before proceeding further.

Military personnel and accompanying civilians in Saudi Arabia are subject to "General Order No. 1A," which prohibits the "introduction, possession, transfer, sale, creation or display of any pornographic or sexually explicit photograph, video tapes, movie, drawing, book, magazine, or similar representations."[1] (GO-1A, ¶ 2.e) The Order goes on to provide that "[i]tems determined

---

[1] A copy of the Order is attached as Exhibit 1 to this response.

to violate this General Order may be considered contraband and may be confiscated by command or law enforcement authorities . . . ."  (GO-1A, ¶ 6)

On February 22, 2003, Sgt. Henry Lopez was "surfing" the PSAB network, looking for music files.  Lopez found a computer that had its C-drive (i.e., its hard drive), shared out, meaning available for viewing by others.  As Lopez browsed, he came across a pornographic movie and text files of a pornographic nature.  He noted that the computer that was the source of the file was identified as "Jtf-j65-ngith."

On either February 24 or 25, 2003, Lopez reported what he found to an investigator, Sgt. Eric O'Brien, who was able to identify the computer as being associated with King.  O'Brien contacted Sr. Airman Jennifer Lamar who was the information protection officer for PSAB.  Lamar then conducted a remote search of King's laptop, which she was only able to do because (a) the laptop was turned on and logged in to the network, (b) King's files were not password-protected, and (c) King had not limited public access to his files.  Airman Lamar went to the folder where Sgt. Lopez had found the explicit writings, and she located over 1000 such text files, and a subfolder called "pedophilia."  She also confirmed that King had actually accessed the porn video.  Airman Lamar reported her findings to Sgt. O'Brien.

O'Brien then sought "authority to search and seize," which is the military equivalent of a search warrant.  He presented an affidavit to Col. Cheryl Dozier, the designated military magistrate.  The affidavit recited Sgt. Lopez's original discovery of the pornographic video and Lamar's confirmation that King had viewed the video, as well as Lamar's discovery of the 1000 text files of explicit writings.  The affidavit also recited that within King's text files were video files that could not be accessed from the network.  Col. Dozier granted authority to search King's computer, any

storage devices such as computer disks, and any other pornographic material present in the room. The execution of the search located 8 CD-ROM's that contained the child pornography at issue in the indictment.

## II.  ARGUMENT

### A.  King Cannot Establish that the Remote Search of His Laptop Violated the Fourth Amendment

In his motion, King argues that the preliminary search of his computer by Sgt. Lamar was an impermissible warrantless search. This argument fails because (1) King could not have a reasonable expectation of privacy, since his files were available for viewing by anyone with access to the network and he consented to monitoring of his computer, and (2) the search of the computer was a proper "workplace" search.

#### 1.  King Had No Reasonable Expectation of Privacy

The party moving to suppress "has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 132 n.1 (1978). Thus, "the defendant bears the burden of proving facts that demonstrate the reasonableness of his expectation of privacy in the searched area." *See United States v. Miravalles*, 280 F.3d 1328, 1332 (11th Cir. 2002). To satisfy this burden, the defendant must prove that he has a subjective expectation of privacy that society is prepared to recognize as objectively reasonable. *See United States v. Secura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006).

A person who places an item in an area accessible to third parties cannot satisfy this standard. Thus, a person who leaves trash at the side of the street, where it is "readily accessible to animals, children, scavengers, snoops, and other members of the public" does not have a reasonable

expectation of privacy in the trash. *California v. Greenwood*, 486 U.S. 35, 40-41 (1988). Likewise, tenants of an unlocked apartment building did not have an expectation of privacy in the common areas. *See Miravelles*, 280 F.3d at 1328 ("There was nothing to prevent anyone and everyone who wanted to do so from walking in the unlocked door and wandering freely about the premises. Under these circumstances, any expectation of privacy in the common areas was not only unreasonable, but foolhardy."). In the computer context, there can be no expectation of privacy in data that is shared with others. *See Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001) (users of a computer bulletin board service "lack a legitimate expectation of privacy in the materials intended for publication or public posting"); *J.S. v. Bethlehem Area School District*, 757 A.2d 412, 425 (Pa. Cmnwlth. 2000) (no expectation of privacy in materials posted on website), *aff'd on other grounds*, 807 A.2d 847 (Pa. 2002). Moreover, any possible expection of privacy is diminished by King's consent to monitoring of his network usage. *See United States v. Simons*, 206 F.3d 392, 398-99 (4th Cir. 2000).

Here, King cannot establish a subjective or objective expectation of privacy. His files were literally available to everyone, and the original materials were discovered by a person searching the system for music files. Like the garbage in *Greenwood* and the common areas in *Miravelles*, King's files were available to anyone who was inclined to look at them. Thus, as was the case in *Miravelles*, any expectation of privacy "was not only unreasonable, but foolhardy." Therefore, the search of King's computer files did not violate the Fourth Amendment.

### 2. The Search Was a Proper Government Workplace Search

Even if King had a reasonable expectation of privacy in the computer files, Sgt. Lamar was permitted to search these files as part of an investigation into workplace misconduct. Government employers are permitted "when there are reasonable grounds for suspecting that the search will turn

up evidence that the employee is guilty of work-related misconduct." *O'Connor v. Ortega*, 480 U.S. 709, 726 (1987) (plurality opinion); *see id.* at 732 (Scalia, J., concurring) ("[G]overnment searches . . . to investigate violations of workplace rules . . . do not violate the Fourth Amendment."). Applying *O'Connor*, courts have upheld workplace computer searches as legitimate investigations of misconduct. *See United States v. Slanina*, 283 F.3d 670, 677-80 (5th Cir. 2002) (workplace misconduct search of computer permissible even though misconduct in question–possession of child pornography–was also a violation of criminal law); *United States v. Simons*, 206 F.3d at 399-401 (same).

Here, the search was legitimate under *O'Connor*. The search was "justified at the inception" because the preliminary information available to Sgt. Lamar gave her "reasonable grounds for suspecting that the search [would] turn up evidence that [King was] guilty of work-related misconduct, namely, a violation of General Order 1A. *O'Connor*, 480 U.S. at 727. The search was not excessively intrusive: King's dorm room was not searched and no password protected files were open. Therefore, King cannot show that the initial remote search was unreasonable.

      **B.**      **The Presentation of the Search Warrant Application to the Military Magistrate Satisfies the Neutral Magistrate Requirement**

A civilian working or living on a military installation is subject to the military's search procedures, provided that those procedures comply with the Fourth Amendment. *See United States v. Brown*, 784 F.2d 1033, 1036-38 (10th Cir. 1986); *United States v. Rogers*, 388 F. Supp. 298, 301-02 (E.D. Va. 1975). Under the military's procedure, a "military magistrate" may grant authorization to search. *See* Mil. R. Evid. 315(d)(2). A military magistrate will be considered neutral and detached for Fourth Amendment purposes as long as she does not take "an active and personal part

in the gathering of evidence or otherwise acts 'as a law enforcement official.'" *United States v. Hobbs*, 62 M.J. 556, 559 (U.S. Air Force Ct. Crim. App. 2005), *review denied*, 63 M.J. 178 (U.S. Armed Forces Ct. App. 2006). The fact that the officer granting the search is in the chain-of-command of the person seeking authorization to search does not change this result. *See United States v. Banks*, 539 F.2d 14, 16 (9th Cir. 1976) (base commander who did not participate in investigation "qualifies as a neutral and detached magistrate for the purpose of determining probable cause."). Here, King can proffer no evidence of any involvement by Col. Dozier in the investigation, and therefore he cannot establish a Fourth Amendment violation.

    C.    **The Affidavit Established Probable Cause**

In deciding whether to issue the authorization to search, the duty of the military magistrate was to determine whether there was "a reasonable belief that the property or evidence is an unlawful weapon, *contraband*, [or] evidence of crime . . . ." Mil. R. Evid. 316(b); *see generally Illinois v. Gates*, 462 U.S. 213, 238 (1983) (duty of judge issuing search warrant "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place"). Given that under General Order 1, *all* pornography, child or otherwise, was contraband, the affidavit clearly set forth probable cause. In fact, the affidavit's recitation that a ninety-minute pornographic video was discovered on the computer was, standing alone, sufficient probable cause to search the computer and any removable media. However, in addition to this information, the affidavit recited that there were 1000 pornographic text files, many of which dealt with children. Moreover, the affidavit recited that there were other video files that had titles that were sexually explicit in nature.

Therefore, there were clearly sufficient facts to justify a search of the room and computer for pornography. Therefore, the affidavit established probable cause.[2]

### D. The Good Faith Exception to the Exclusionary Rule Applies

"[C]ourts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002); *see also* Mil. R. Evid. 311(b)(3) (adopting good faith exception for military courts). In this case, there would be no reason why Sgt. Lopez could not rely in good faith on the warrant that was issued, which was based on an affidavit that presented substantial evidence that contraband would be found on the computer. Therefore, the good faith exception would prevent operation of the exclusionary rule and permit use of the evidence.

### CONCLUSION

For the reasons set forth above, the United States requests that the Court deny King's motion to suppress.

---

[2]Even if the court found that some or all of the search conducted by Airman Lamar was unlawful, the search would still be valid. If a search warrant affidavit contains information an unlawful search, the search conducted pursuant to the warrant is still valid if the affidavit, with the unlawfully obtained information excised, would have sufficient probable cause. *See United States v. Chaves*, 169 F.3d 687, 692-93 (11th Cir. 1999); *United States v. Williams*, 2004 WL 936340, *4-5 (M.D. Ala. Apr. 8, 2004). Here, even absent Airman Lamar's search, based on Sgt. Lopez's surfing, the government knew that King's computer had a pornographic video and explicit writings on it. Since all pornography is contraband under General Order 1A, there would have been probable cause to search King's computer and storage media even absent the additional information obtained by Airman Lamar.

Respectfully submitted this the 21st day of July, 2006.

>LEURA G. CANARY
>UNITED STATES ATTORNEY
>
>/s/Andrew O. Schiff
>ANDREW O. SCHIFF
>Assistant United States Attorney
>One Court Square, Suite 201
>Montgomery, Alabama 36104
>Phone: (334) 223-7280
>FAX: (334) 223-7135
>E-mail: andrew.schiff@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:05cr301-WHA |
| | ) | |
| MICHAEL DAVID KING | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Jeffery C. Duffey, Esq.

      LEURA G. CANARY
      UNITED STATES ATTORNEY

      /s/Andrew O. Schiff
      ANDREW O. SCHIFF
      Assistant United States Attorney
      One Court Square, Suite 201
      Montgomery, Alabama 36104
      Phone: (334) 223-7280
      FAX: (334) 223-7135
      E-mail: andrew.schiff@usdoj.gov