```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF ALABAMA
                   NORTHERN DIVISION

UNITED STATES OF AMERICA,      *
                               *
     Plaintiff,                *
                               *
V.                             * CR. NO.
MICHAEL DAVID KING             * 2:05CR301-WHA
                               *
     Defendant.                *
```

**OBJECTIONS TO THE RECOMMENDATION TO THE MAGISTRATE JUDGE**

Comes now defendant Michael King, by counsel, and submits the following objections to the Recommendation of the Magistrate Judge.

**I.**

Defendant respectfully contends that the following findings are either erroneous or not supported by the law.

**A.** At page 4, footnote 7, the Court found that:

> By comparison to other secured spaces, King's failure to ascertain the effectiveness of his settings was tantamount to his locking a door without checking to see if he could enter or conducting a private conversation on a bus without making sure that no one other than the intended listener could hear him. In both situations, the failure to *assure* privacy dilutes the *expectation* of privacy.

Defendant contends this finding is not supported by any legal authority. Defendant contends that the important

1

consideration is defendant's "expectation" of privacy, not whether he double checked to see if his security settings actually worked.  Closing one's door sends the same message of expectation of privacy as does the actual locking of the door.  **Katz v United States**, 389 US 347,351-352 (1967) only requires that one "seek" to preserve something as private, not that one guarantee that what he seeks to do actually works properly.

    **B.**   At page 4, first paragraph, last sentence: It was found that Sgt. Lopez "was involved in monitoring computer files on the Base."  It is contended GX-1 showed Lopez was not involved in monitoring computer files, and was in fact searching for music files (which defendant contends was probably a violation of network policy).

    **C.**   At pages 5-6 and footnote 8 the Court found from LaMar's testimony that she had not focused on any individual when she conducted her warrantless search of the computer in question and that she could have determined the computer's location but did not do so.  This appears contrary to DX-2 wherein LaMar in her written statement stated in part that during the warrantless search:

> I copied the explicit material as well as the user profile ...It appears that the computer in question is in the dorm room of Mr. Michael King.  The only profile on that computer

2

>> belonged to king.michael.  It looks like he is the only person to use that computer.

**D.** The defendant contends that the Court's finding that he only claimed an expectation of privacy in his dorm room and not in his computer is erroneous.  See page 12, 18.  Although defendant in his motion to suppress claimed a right of privacy in his dorm room, he properly argued in his motion that the computer in his room was the specific item for which the claim was made.  The defendant's statement of facts in his motion to suppress dealt almost exclusively with the search of defendant's computer in his dorm room.  Further, defendant stated at page 6 of his motion that: Any information contained on defendant's computer was private."  Doc. 23, p. 6.  The testimony and exhibits submitted at the suppression hearing and the Government's response (Doc. 31) focused mainly on the computer search.  Therefore there should be no doubt defendant was specifically claiming a privacy interest in his computer that was located in his dorm room.

**E.** Defendant contends the Court's finding that he did not have an expectation of privacy in his computer files is

erroneous.  See pages 12-14.

    1.  The fact that defendant's computer may have been subject to "monitoring" for "normal routine maintenance and health" (p. 13) does not mean his computer was also subject to search without his consent. LaMar testified and gave a written statement that the network administrator could check the proxy files and logs to determine what sites certain computers were visiting or accessing.  LaMar checked those proxy logs which are stored on the network and not on defendant's computer and determined that defendant had not visited or accessed any areas that violated General Order 1. See pages 6-7, 14 of the Recommendation and DX-2.

    2.  LaMar conducted what she admitted was an "extensive" search (p. 6) of defendant's computer files located in his computer at the direction of criminal investigator O'Brien (p. 5).  This was done without a warrant based on information that O'Brien admitted was not sufficient to obtain a warrant (p. 9).

    3.  It is undisputed that defendant sought to protect his computer from intrusion.  The Court has found that he had no expectation of privacy because he did not make a determination that the protections he implemented

actually were effective (p.13).  **Katz v United States**, 389 US 347,351-352 (1967) only requires that one "seek" to preserve something as private, not that one guarantee that what he seeks to do actually works properly.  **Katz** also requires that one "knowingly" expose to the public to render it non-private.  Defendant did not knowingly expose his computer files to the public when he actively sought to protect his computer from intrusion.

   **F.**   It is defendant's contention that the Court's findings at pages 14-17 that the Government conducted a proper workplace search is erroneous.

      1.  It is contended that this was not a workplace search because the computer searched was located in the private dorm room of defendant, and the computer itself was the private property of defendant (p. 2).

      2.  It is also contended that the search was a criminal investigation conducted at the request of a criminal investigator, O'Brien (p. 8-9)

      3.  The Court relies in part on **O'Conner v. Ortega**, 480 US 709, 107 S.Ct 1492, 94 L.Ed 2d 714 (1987).  In O'Conner it was stated that:

         a.  "Searches and seizures by government

5

employers or supervisors of the private property of their employees, therefore, are subject to the restraints of the Fourth Amendment."  480 US at 715.

  b.  "The appropriate standard for a workplace search does not necessarily apply to a piece of closed personal luggage, a handbag, or a briefcase that happens to be within the employer's business address."  Id. at 716.

  c.  "Within the workplace context, this Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police.  See *Mancusi v. DeForte, 392 U.S. 364 (1968)*.  Id. at 716.

  d.  "The only cases to imply that a warrant should be required involve searches that are not work related, see *Gillard v. Schmidt, supra, at 829, n. 1,* or searches for evidence of criminal misconduct, see *United States v. Kahan, 350 F.Supp. 784 (SDNY 1972)*."  Id. at 721.

  4.  It is contended that because defendant's case was a criminal investigation referred for criminal prosecution, and a search of defendant's private items, the Fourth Amendment applies and a warrant was required before LaMar conducted her extensive search without a warrant.

 **G.**  It is contended the following are factual errors:

1) at page 16 Lopez reported to O'Brien, a criminal investigator, not LaMar (GX-1); 2) defendant contends there was evidence that LaMar conducted a "general search of all of King's files." (See DX-1).

**H.** Defendant contends that the Court's finding of probable cause to issue the search warrant is erroneous because the information contained in the affidavit in support of the warrant was obtained in violation of the Fourth Amendment to the U.S.Constitution.

**I.** Defendant contends the Court's findings that defendant failed to show that Col. Dozier was not a neutral and detached magistrate is erroneous. The Court found that "King offered no evidence regarding Col. Dozier's position, her command relationship with Lopez and LaMar, or any other evidence ....

   1. Lopez, LaMar and O'Brien were all serving under the direct supervision and command of Col. Dozier (Tr. 58, 62, DX-1, DX-2).

   2. It is defendant's position that one's supervisor or commander is not neutral and detached. Once defendant made a sufficient showing that the magistrate issuing the warrant has a supervisory connection, it is

7

contended the defendant has met his burden. The Government did not come forward with any evidence to show why a supervisor was neutral and detached. Defendant has been unable to locate any further authority on this issue other than the case previously cited in the Recommendation.

## II.

Wherefore, defendant respectfully requests that this Court review the Recommendation of the Magistrate Judge and these objections, the transcript previously filed with the Court, and upon review that this Court will set this matter for hearing and/or reverse the Recommendation of the Magistrate Judge, and order that all items and information obtained by the Government as a result of the search and seizure be suppressed.

Respectfully submitted this 19th day of October, 2006.

>s/Jeffery C. Duffey
>JEFFERY C. DUFFEY
>Attorney for Defendant
>Michael David King
>600 South McDonough Street
>Montgomery, AL  36104
>Phone: 334-834-4100
>Fax: 334-834-4101
>email: jcduffey@aol.com
>Bar No.  ASB7699F67J

**CERTIFICATE OF SERVICE**

I hereby certify that October 19, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Andrew O. Schiff
AUSA
P.O. Box 197
Montgomery, AL 36101

                                          Respectfully submitted,

                                          s /Jeffery C. Duffey
                                          JEFFERY C.  DUFFEY
                                          Attorney for Defendant
                                          Michael David King