IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| vs. | ) | CR. NO. 2:05cr301-A |
| MICHAEL DAVID KING | ) | |

**ORDER**

This case is before the court on the Recommendation of the Magistrate Judge (Doc. #51), recommending that the Defendant's Motion to Suppress be denied, together with Defendant's Objections thereto (Doc. #55).

The Magistrate Judge held an evidentiary hearing on the Motion to Suppress, and thereafter entered her recommendation. In accordance with the law of this Circuit, the court has conducted a *de novo* review of the Magistrate Judge's Recommendation, including reading the transcript of the evidentiary hearing, examining the exhibits, and fully considering the objections of the Defendant.[1]

A district court judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings. *United States v. Raddatz*, 447 U.S. 667, 680, 100 S.Ct. 2406 (1980). It has been noted that "[I]mplicit in *Raddatz* is a recognition that the credibility findings of a magistrate, who personally observed and listened to the testimony of live witnesses, may be

---

[1] *See Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Georgia*, 896 F.2d 507, 513 (11th Cir. 1990) ("Thus, although *de novo* review does not require a new hearing of witness testimony, it does require independent consideration of factual issues based on the record. If the magistrate makes findings based on the testimony of witnesses, the district court is obliged to review the transcript or listen to a tape-recording of the proceedings.")

accepted unless the district judge, in his de novo review, finds reason to question the magistrate's assessment of the evidence." *Blizzard v. Quillen*, 579 F.Supp. 1446, 1449 (D.Del. 1984); <u>see also</u> *Buckley v. McGraw-Hill, Inc.*, 762 F.Supp. 430, 435 (D.N.H. 1991).

After reviewing the record and reading the transcript of the evidentiary hearing, the court makes an independent factual determination and agrees with the Magistrate Judge's credibility assessments.

The court finds no reason to question the findings of the Magistrate Judge or to order a new evidentiary hearing to take additional evidence. <u>See</u> *United States v. Veteto*, 701 F.2d 136, 140 (11th Cir. 1983), <u>cert. denied</u>, *Wescott v. U.S.*, 463 U.S. 1212, 103 S.Ct. 3548 (1983) [2]; *United States v. Cofield*, 273 F.3d 1303 (11th Cir. 2001).[3]

The Defendant objects to the finding that the Defendant did not have a reasonable expectation of privacy in the computer files located on his personal computer in his private dorm room on the Prince Sultan Air Base. Normally, courts likely would afford a reasonable expectation of privacy to computer files located on a personal computer in a private dorm room. In this particular situation, however, the Defendant connected the computer to the Air Base's network. Through this connection to the network, others could view the Defendant's computer files because of network policies and implemented procedures. Defendant admittedly was aware of such policies and procedures. Defendant attempted to install security settings on his personal

---

[2] "If the district court concurs with the magistrate's recommendation, it need not hold another evidentiary hearing, even where the credibility of certain witnesses might be an important factor in making the determination." *Id.*

[3] "In *United States v. Raddatz* (citation omitted), the Supreme Court held that a district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings."

computer that would override the network policies, but this attempt ultimately was unsuccessful. Furthermore, the Defendant never took any measures to assure that his security settings were functioning appropriately.

To support his argument, the Defendant points to the Supreme Court's holding in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507 (1967). In *Katz* the government had placed surveillance wires on the outside of a public phone booth to record the conversations of Mr. Katz inside the booth. The Court ultimately held that such measures of surveillance violated Mr. Katz's reasonable expectation of privacy. The Defendant in this case argues that the holding in *Katz* supports the proposition that, in order to have a reasonable expectation of privacy, one is required only to seek to preserve something as private, not guarantee that it is private. According to the Defendant, under that interpretation, he maintained a reasonable expectation of privacy in his computer files by attempting to install security settings that would prevent outside access to his files. The Defendant's interpretation, however, characterizes the *Katz* holding too broadly.

In *Katz*, the Court acknowledges that "what [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz*, 389 U.S. at 351. The context in which the Court makes that general statement, however, is not comparable to the situation at bar. As the Magistrate Judge recognized in her Recommendation, *Katz* is distinguishable on several grounds.

Most important, the defendant in *Katz* had no reason to believe that the privacy of his conversation was at risk. He stepped into a public phone booth, closed the door behind him and placed a call with no knowledge of any potential surveillance. In contrast, the Defendant in the

3

present situation connected his computer to the Air Base's network, knowing that the users of that particular network were subject to monitoring of their traffic and activities. By connecting to the network and exposing his computer to the network's "share," the Defendant placed his computer files in plain view for other users of the network. His local settings attempted to limit that access, but were unsuccessful. He would have known that if he had attempted to access his personal computer from an outside computer, but he did not.

As opposed to merely seeking to preserve privacy like the defendant in *Katz*, the Defendant in this case consciously exposed his computer files to anyone using the network and subsequently attempted to thwart the others' access to these files. In order to have a reasonable expectation of privacy for those files, however, the Defendant would have to assure that the measures taken were successful. He did not. Therefore, he had no reasonable expectation of privacy.

In sum, the Magistrate Judge correctly distinguishes the holding of *Katz* from the case at bar. While the Court in *Katz* recognized that "what [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected[,]" the facts of the present case are too attenuated from the circumstances of *Katz* for that statement, taken by itself (as the Defendant presents it in his objection), to have a controlling effect here.

The Defendant also objects to the Magistrate Judge's finding that the warrantless search was a workplace search.

If the Defendant had no reasonable expectation of privacy, then he has no standing to object to the search. The Magistrate Judge's Recommendation notes this, but then further analyzes whether the warrantless search conducted by Sgt. Lamar, the Base's information

protection officer, was nonetheless appropriate because of its nature as a workplace search. The Magistrate Judge ultimately found, as her Recommendation reflects, that the search was appropriate as a workplace search. The Defendant contends that the court's finding that the government conducted a proper workplace search is erroneous.

The objection contends that this search by Sgt. Lamar was part of a criminal investigation authorized by Sgt. O'Brien, and, as such, it could not be a workplace search. This characterization of workplace search law, however, is inaccurate. As the evidence indicates, Sgt. Lopez initially found pornographic files violating General Order-1A (an order preventing the possession of any pictures depicting the female body between the neck and the knees, which was offensive to the Saudis). Lopez reported this finding to Sgt. O'Brien, who asked Sgt. Lamar to investigate. The testimony is not entirely clear whether a criminal investigation had begun at this point in time or not. Regardless, even assuming that Sgt. Lamar's search was part of a criminal investigation, this search also was based on work-related misconduct, the violation of General Order-1A. As the Supreme Court noted in *O'Connor v. Ortega*, 480 U.S. 709, 711 (1987), the probable cause requirement is sometimes impracticable "for legitimate work-related, non-investigatory intrusions *as well as investigations of work-related misconduct*. . . . [P]ublic employer intrusions on the constitutionally protected privacy interests of government employees for non-investigatory, work-related purposes *as well as investigations of work-related misconduct* should be judged by the standard of reasonableness under all circumstances." The highlighted language above indicates that, even though Sgt. Lamar's search of the Defendant's files was arguably part of a criminal investigation, that investigation was also an investigation of work-related misconduct. Essentially, they were one in the same. Therefore, merely arguing

that the search was part of a criminal investigation does not automatically defeat the search's contemporaneous status as a workplace search.

The Defendant also points out that the government searched the files on his personal computer located in his private dorm room. The Defendant argues, therefore, that this search could not have been a workplace search. Such a characterization of the evidence, however, is misleading. While the computer was the Defendant's personal property and was located in his private dorm room, it still was connected to the Air Base's network. Once connected to the network, the files on that personal computer were available to all persons with access to the network. Moreover, the discovery of prohibited files on the network during a routine search of the network prompted the search of the specific files attributed to the Defendant's computer. In fact, it is a better characterization to say that the investigator conducted a search of the network, and the Defendant's computer files were a part of that network. This search was conducted to determine whether there had been a violation of General Order-1A. Therefore, this search qualifies as a workplace search because it was a search to ferret out a workplace violation. The fact that the files ultimately were saved to the Defendant's personal computer located in his private dorm room is irrelevant because of the computer's connection to the Air Base's network and the subsequent availability of these files to anyone using that network.

In sum, considering the evidence presented and the applicable law, the Magistrate Judge's finding that this search qualifies as a workplace search is appropriate. While the Magistrate Judge's Recommendation does contain some factual misstatements with regard to whom Lopez informed about his findings and when the investigation officially became a criminal investigation, the overall assessment of the evidence and the law is correct.

The court notes that this particular finding actually is unnecessary, considering that the Defendant had no reasonable expectation of privacy in his computer files.  Without a reasonable expectation of privacy, the Defendant has no standing to object to the search.

The court finds that all of Defendant's objections, including the two discussed above, are without merit, and they are due to be overruled.

Accordingly, it is hereby ORDERED as follows:

1.  The objections are OVERRULED.

2.  The court ADOPTS the Recommendation of the Magistrate Judge.

3.  The Defendant's Motion to Suppress is DENIED.

DONE this 28th day of November, 2006.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE